AMERICAN SEWAGE DISPOSAL CO. v. CITY OF PAWTUCKET.

(Circuit Court, D. Rhode Island.  August 25, 1904.)

**1. PATENTS—INFRINGEMENT—SEWAGE APPARATUS.**
    The Glover patent, No. 559,522, for a sewage apparatus, does not describe or claim the combination of putrefactive and oxidizing processes of treatment, nor describe tanks suitable for putrefactions, and is not infringed by an apparatus in which a primary liquefying tank is used instead of the filter-beds of the patent.

In Equity.

Edward P. Payson, for complainant.

William R. Tillinghast and Edward W. Blodgett, City Sol., for defendant.

BROWN, District Judge.  This suit is for infringement of letters patent No. 559,522, issued May 5, 1896, to A. S. Glover, for sewage apparatus.  The claim is:

"A sewage apparatus comprising a series of stationary primary filter-beds, a structure over said beds with provision for the removal of offensive gases therefrom, and a series of stationary secondary filter-beds located outside the said structure and arranged to receive by gravitation the effluent from the primary filter-beds, the said primary beds being constructed to discharge the effluent wholly through filtering material, whereby the offensive matter is retained in the structure and the effluent is clarified and partially purified, and whereby said effluent may receive subsequent treatment in the open air by extensive secondary beds for any required length of time, without offense."

It is the complainant's contention that the substance of Glover's invention is the intentional application of liquefaction as a means for preliminary purification, followed by a further purification on sand filters or similar filter-beds.  The complete process of purification is said to be due largely to the action of bacteria of two kinds: first, anaerobic bacteria, or the bacteria of putrefaction, which work in the absence of oxygen, to liquefy the solids of sewage; second, aerobic bacteria, which work in the presence of oxygen.  "The first are the scientific explanation of putrefaction; the second of oxidation."  Oxidizing bacterial action on open-air sewage sand filters was well known, and is not claimed as new with Glover.  The secondary filter-beds, located outside the structure, are intended for this well-known process, and do not require special consideration. The principal question in the case relates to that element of the claim described as "a series of stationary primary filter-beds * * * constructed to discharge the effluent wholly through filtering material."  The defendant uses a primary tank, which contains no filtering material, but which discharges the effluent upon outside oxidizing filter-beds by means of a pipe.  The defendant's tank at times has been used for putrefactive action, to liquefy and dispose of the solid matter of sewage.  It is charged that the defendant thus uses the substance of the complainant's patent, namely, putrefactive action followed by oxidation for the complete disposal of sewage. The value of a putrefactive tank, or a septic tank, in the liquefaction

of the solids of sewage, is not denied, but admitted by the defendant, whose brief says:

"Both sides agree that by passing sewage continuously through a tank for from three to six weeks, permitting the deposits to accumulate meantime, there occurs a large evolution of gas, a change in color, and a peculiar appearance and odor to the effluent, accompanied by a marked and substantial liquefaction, and what Prof. Kinnicutt has aptly called 'true septic action' begins. The apparatus for obtaining this is well known, namely, a tank, through which the sewage is permitted to pass slowly, but continuously, and constantly containing a very considerable depth of liquid."

The defendant denies that the patent discloses any intention to use putrefaction, or septic action, for the purpose of liquefying the solids or sludge of sewage, or that it discloses a suitable apparatus for such action. On the contrary, it contends that the primary beds of the patent are merely rapid strainers, in which there was intended to be more or less oxidation. An examination of the specification of the patent in suit gives strong support to the defendant's position. The specification states that the primary filter-beds are constructed to separate the solid from the liquid matter. Also:

"The sewage may be first deposited in a settling-tank, * * * and after sedimentation or chemical precipitation in said tank the liquid and the sludge may be drawn off onto the primary filter-beds."

It is admitted by complainant's experts that previous chemical precipitation in a settling tank is inconsistent with septic action in the primary filter-beds. "The primary beds are constructed to arrest the solid matter, and permit the escape of the liquid matter wholly through filtering material"—as, for example, "a series of porous pipes," or sand or gravel—"the offensive matter being retained in the gas-removing structure, where it may be composted with ashes, loam, or sand, and removed without offense." Mechanical removal of sludge is inconsistent with removal by septic action. "I prefer to provide seven or more of the primary beds and an equal number of secondary beds, each primary bed and the accompanying secondary bed being of sufficient capacity to dispose of one day's sewage. The solid matter deposited in the primary beds may be removed from time to time in any suitable way." The provision of such a series is a strong indication that no putrefactive or septic action was relied upon as the means to liquefy the solids. It is very clear that the patent, as a document, contains no indication that the solid which is left after straining will dispose of itself through putrefaction or bacterial action. According to a natural interpretation, the instructions are not to let it remain and dissolve, but to remove it bodily.

Upon the question whether the primary filter-beds are receptacles for putrefactive action, the principal, and, in my opinion, the only, important argument of the complainant is that the provision of means for the removal of gases contemplates abundant gases from putrefaction, and consequent retention to obtain putrefaction. But this is fully met by evidence that a ventilating structure was frequently used over oxidation beds where no putrefaction was intended.

The defendant also relies upon the file wrapper, which shows clearly

that "rapid intermittent filtration" through the primary filter-beds was intended as a feature of the operation of the structure. To meet a reference to Glover's former patent, No. 258,744, counsel for Glover, in a communication to the Patent Office, said:

"Applicant's former patent, 258,744, does not show filter-beds. It contains simply a series of tanks in which the sewage is acted upon only by sedimentation. The effluent leaves the structure without being clarified by filtration. The apparatus shown in said patent does not, therefore, show the construction now claimed, nor an equivalent thereof, lacking as it does the two series of filter-beds."

The defendant's primary tank has no filtering material whatever, and is distinguishable from the primary filter-beds of the patent exactly as those of the patent were distinguished from the tanks of Glover's prior patent. The contention that the primary beds of the patent were intended for putrefactive action seems to me without substantial support in the documentary evidence. It is conceded that the rapid escape of water from the first receptacle is inconsistent with or detrimental to septic or putrefactive action; that such action would be prevented by removal of solid matter every 24 hours; and that previous chemical precipitation in settling tanks would destroy it. Moreover, complainant's experts know of the existence of no septic tanks in which a similar filtering operation was attempted. On the other hand. an intermittent action of the series of primary filter-beds, such as is indicated in the patent, would have been advantageous for aerobic or oxidizing beds  The extent to which the complainant's experts are driven to find an equivalent for the primary filter-beds of the patent in suit is illustrated by the statement:

"Filtering material, or some substitute therefor, whose purpose is the holding back of solid matter in the tank is essential to liquefaction in such tank; but filtering material, as material, is not essential."

This means, I take it, merely that only a tank is essential, and not a tank with filtering material.

An argument upon which complainant lays much stress is that Glover must have intended putrefactive action in the primary filter-beds, because about 1880 he made the discovery that sewage disappeared in a remarkable manner through use of two cesspools connected by a pipe and a ventilating pipe carried up the side of his house; that this disappearance was doubtless due to anaerobic or putrefactive action; and that all of Glover's experiments were a development of this discovery. This argument, if adopted to sustain the charge of infringement, would require us not only to read into the patent something of which it contains no sufficient suggestion, but also to ignore the fact that the specification, in many particulars to which we have already referred, is inconsistent with the necessary retention of solids or sludge for the development of bacterial growth. We are asked to press the doctrine of benevolent construction to such an extent as to reject the element of primary filter-beds made essential in the claim and in the correspondence with the Patent Office, and to confer upon Glover what he did not ask for in the Patent Office or obtain in his patent.

The evidence upon which the complainant relies to show that

Glover made the important discovery that the solids or sludge could be disposed of through liquefaction is far from satisfactory or convincing. I am of the opinion that the complainant has failed to show that Glover had any such knowledge of the necessary conditions for producing a true septic action as entitles him to be called a pioneer in that branch of the modern art of sewage disposal, which intentionally employs putrefactive action as an agent in the disposition of sludge. The ventilating pipe on his house seems to have suggested to him a strong current of air and ventilating apparatus as an agent in reducing solids. Coupled with this were indefinite notions of bacterial action, but with no perception of a difference between the action of inclosed filters ventilated by a current of air and the action of the ordinary uncovered oxidizing filer-beds in common use.

In my opinion, the patent does not, either directly or by fair implication, describe or claim the combination of putrefactive and oxidizing processes, nor the use of putrefactive action to reduce sludge; nor does it describe primary tanks suitable or intended for the production of this action, to any substantial extent. There rests upon the defendant no burden to prove a complete absence of any degree of liquefying action in the primary filter-beds; but, on the contrary, the complainant's argument requires it to prove that the primary filter-beds, with the described straining action, are the equivalent of a proper septic tank designed for the retention of a substantial amount of liquid and sludge for such time as to develop a proper putrefactive action. This, in my opinion, the complainant has failed to do. If the structure of the patent in suit is capable of two distinct modes of use, one involving invention and one not, it is incumbent upon the patentee to point out that mode of use which involves invention. In this patent the suggestions as to the mode of use point rather to rapid straining and oxidation than to intended putrefactive action for the purpose of liquefying the solids.

In my opinion, the defendant does not infringe, for the reason that it does not have the element of the claim, "a series of stationary primary filter-beds * * * constructed to discharge the effluent wholly through filtering material," nor any equivalent therefor which will perform the function of filtering the sewage to separate the solids and liquids. The use of putrefactive action to liquefy solids is not an infringement of anything described or claimed in the patent, or proved to be substantially involved in any operation of the patented structure intended by the patentee. It does not seem necessary or useful to consider the defense of anticipation of the claim as construed by the complainant, since I am of the opinion that the complainant's construction of the claim is unsound; nor do I consider it necessary, to consider the legality of the transfer to the complainant of the title to the patent.

The bill will be dismissed.